PER CURIAM:
 

 Larry Bach appeals from the judgment against him for common law fraud and for violations of the federal and state securities laws, the Racketeer Influenced and Corrupt Organizations Act (“RICO”), and the Tex.Bus. & Com.Code Ann. § 27.01 (Vernon 1968) under the theories of conspiracy, agency, alter ego and partnership. Prior to his civil trial, Bach filed a petition in bankruptcy and now argues that (1) the district court erred in holding that his debt was nondischargeable under 11 U.S.C. § 523(a); (2) the evidence was insufficient to support the judgment; and (3) the district court erred by denying his motion for a continuance and a new trial before a jury. We hold that the district court exceeded the scope of the bankruptcy court’s order modifying the automatic stay under 11 U.S.C. § 362, and we reverse its ruling on the dischargeability of Bach’s debt. We affirm on the remaining issues and uphold the judgment against him.
 

 I
 

 This case concerns a failed joint venture agreement between Landmark Oil & Gas Corporation (“Landmark”) and the appel-lees (“the Casperone group”). Bach, acting as Landmark’s attorney, drafted the agreement that involved certain oil and gas leases in eastern Oklahoma. The Casperone group negotiated the deal with Kenneth Wilson, Landmark’s president, and then entered the deal, relying on misrepresentations about well production, return on investment and that the leases were free and clear of liens. Wilson and Bach did not inform the Casperone group that the Securities and Exchange Commission (“SEC”) had sued and obtained a permanent injunction against them in 1983 for securities violations in connection with their fraudulent operation of Homestead Oil Company (“Homestead”). Like Landmark, Homestead had offered to investors interests in oil and gas properties in eastern Oklahoma without proper SEC registration. They had failed to disclose investment information to Homestead’s investors and had made misrepresentations, similar to those made in the Landmark joint venture.
 

 Needless to say, the Casperone group lost a substantial sum of money in the venture. Because of the numerous misrepresentations made concerning the Landmark leases, the Casperone group sued the principals of Landmark, including Wilson and Bach, for violations of the federal and state securities laws, RICO, the Texas Business and Commerce Code, civil conspiracy to defraud, common law fraud and breach of contract. On the eve of trial, Bach filed a petition under Chapter 11 of
 
 *114
 
 the Bankruptcy Code, which was later converted to a Chapter 7 proceeding.
 

 Upon motion of the Casperone group, the bankruptcy court modified the automatic stay under 11 U.S.C. § 362 to permit prosecution of the pending suit against Bach “for the purposes of liquidating the claim only.”
 

 Trial preparations proceeded, but Bach failed to participate in the pretrial conference and was not present for jury selection the day before trial. At this time, the Casperone group and a codefendant agreed to waive their right to a jury trial. Because Bach failed to appear at the scheduled conference, the court expressly held that he, too, had waived his right to a jury trial. The trial began at 9 a.m. on February 25, 1986, and Bach did not appear until 1:30 that afternoon. Claiming that he had not received notice of the trial until 11 a.m. that day, Bach moved for a continuance. The court denied his motion but ruled that Bach could review a tape recording of the morning’s testimony and that he could note for the record his objections to the testimony. Bach never listened to the tape. At trial Bach made no objection that the case was being tried without a jury, and the court entered judgment for the Casperone group.
 

 Bach filed motions for a new trial and judgment notwithstanding the verdict. The district court denied these motions, and Bach appealed.
 

 II
 

 Bach first argues that the district court erred in holding that his debt was nondischargeable under 11 U.S.C. § 523(a)(2)(A) and (a)(6) because this ruling conflicts with the bankruptcy court’s order modifying the automatic, stay. The order modifying the automatic stay under 11 U.S.C. § 362 stated:
 

 Movants should be permitted to prosecute pending suit against Debtor ... for the purposes of liquidating the claim only. This Court will then examine the record of the proceeding in the United States District Court for the determination of whether the resolution of that proceeding meets the standards of 11 U.S.C. § 523(a).
 

 The automatic stay under 11 U.S.C. § 362(a) serves, until further order of the bankruptcy court, as an absolute bar to the commencement or continuation of any judicial, administrative, or other proceeding against the debtor “that was or could have been commenced before the commencement of the [bankruptcy] case....” 11 U.S.C. § 362(a);
 
 Browning v. Navarro,
 
 743 F.2d 1069, 1083 (5th Cir.1984). The automatic stay, however, is not incontestable, and a party in interest may file a motion in the bankruptcy court for relief from the stay under 11 U.S.C. § 362(d). Section 362(d) empowers the bankruptcy court to “grant relief from the stay ... by terminating, annulling, modifying, or conditioning such stay ... for cause_”
 

 Because a section 362 stay freezes in place all proceedings against the debtor, and because only an order of the bankruptcy court can authorize any further progress in the stayed proceedings, it follows that the continuation of any proceeding can derive legitimacy only from the bankruptcy court order. The terms of an order modifying the automatic stay must therefore be strictly construed. In this case, the order by its terms did not terminate or lift the stay, not even for the purposes of this single proceeding. The order
 
 modified
 
 the stay in an expressly limited way: the litigation could
 
 only
 
 liquidate the claim. The dischargeability of the claim under 11 U.S.C. § 523(a) was specifically reserved by the bankruptcy court, as stated in its order. Because the district court’s order exceeded the bounds permitted by the modification order of the bankruptcy court, we reverse the district court and set aside its judgment of nondischargeability.
 

 Ill
 

 Bach raises two additional issues: whether there was sufficient evidence to support the judgment against him and whether the district court erred in denying his motion for a new trial. With respect to these remaining issues, we affirm.
 

 
 *115
 
 A.
 

 Without any reference to specific parts of the record, Bach challenges the sufficiency of the evidence to support the judgment against him for common law fraud and for violations of the federal and state securities laws, RICO and Tex.Bus. & Com.Code § 27.01
 
 [1]
 
 under the theories of conspiracy, agency, alter ego and partnership. Bach’s brief is not a model for clearly articulated arguments. That his brief falls short of a careful argument is illustrated by his careless use of “sufficiency of the evidence” as the standard of our review of the district court’s findings. Noting this error, we will proceed to review the district court’s findings of facts supporting its judgment under the “clearly erroneous” standard in Fed.R.Civ.P. 52(a).
 

 We begin with Bach’s challenge to the judgment against him for RICO violations. Bach does not challenge that each of the elements of a RICO violation was established. He argues only that the district court erroneously found that he was associated with Landmark’s racketeering activities and that he committed the predicate acts of mail, wire and securities fraud, which were relied on to establish Landmark’s “pattern of racketeering activity” under 18 U.S.C. § 1962(c).
 

 The evidence showed that an enterprise consisting of Landmark, Wilson and Bach was engaged in the sale of unregistered securities
 
 [2]
 
 in violation of the federal and state securities laws. Bach’s association with the enterprise is shown by Wilson’s introduction of Bach as his partner to the Casperone group, an introduction that Bach did not deny, correct or modify. Bach was also the attorney who drafted the agreement for the joint venture in which the Casperone group invested. Furthermore, Casperone testified that Bach made material representations to him concerning the joint venture. Although Bach testified and denied his participation in Landmark’s fraudulent conduct, the district court is the judge of the credibility of the witnesses and, in this respect, it was no error to find Bach’s testimony unbelievable. In considering whether Bach’s association with the enterprise was innocent or knowing, the district court had the right to rely on the evidence of Bach’s involvement with Wilson in the Homestead scheme, a similar securities fraud that the SEC had successfully enjoined one year earlier. The district court’s conclusion that Bach was a member of the RICO enterprise is not clearly erroneous.
 

 This evidence fully supports the district court’s conclusion that Bach, as a member of the Landmark enterprise, was chargeable with the predicate acts establishing a pattern of racketeering activity. Under RICO, a defendant need not personally commit the predicate acts provided that the evidence is sufficient to connect him to the fraudulent scheme.
 
 R.A.G.S. Couture, Inc. v. Hyatt,
 
 774 F.2d 1350, 1354 (5th Cir.1985);
 
 United States v. Finney,
 
 714 F.2d 420, 423 (5th Cir.1983). Because the district court correctly entered judgment against Bach for the RICO violations, we affirm the money judgment on this basis. Consequently we need not address Bach’s remaining challenges to the money judgment.
 

 B.
 

 In his final argument Bach asserts two grounds of error in the district court’s
 
 *116
 
 denial of his motion for a new trial. First, he claims that he was entitled to a continuance of the trial because he did not receive notice of the proceedings until 11 a.m. on the first day of the trial. Bach argues that he was prejudiced because he was not present during the direct examination of the first witness, and he was denied his right to object to that testimony.
 

 The court denied Bach’s motion for a continuance, ruling that all reasonable efforts had been made to notify Bach of the trial date. To ensure that no prejudice resulted to Bach, however, the district court gave him the opportunity to listen to the recorded testimony of the first witness, and to note any objections. Bach chose not to listen to the tape recording, and his assertions of prejudice for the denial of a continuance consequently have no merit.
 

 Second, Bach argues that a new trial is warranted because he never waived his right to a jury trial. At the pretrial conference, which Bach did not attend, the plaintiffs and a codefendant, Bryce Carroll, waived their demand for a jury trial, and the district court held that “the other parties who have not appeared this afternoon have waived their right to a jury by their failure to appear_” When Bach appeared late on the first day of trial, he made no objection to the absence of a jury, nor did he at any other time during the course of the trial.
 

 Although a proper demand for a jury cannot be withdrawn without the consent of all the parties, Fed.R.Civ.P. 39(a), it is a right that can be waived.
 
 Jones v. Birdsong,
 
 679 F.2d 24 (5th Cir.1982),
 
 cert. denied,
 
 459 U.S. 1202, 103 S.Ct. 1186, 75 L.Ed.2d 433 (1983); 9 C. Wright & A. Miller,
 
 Federal Practice and Procedure
 
 § 2321 (1971 & Supp.1986). We have already noted that Bach failed to appear at the pretrial conference in which his code-fendant and the plaintiffs consented to a nonjury trial and also failed to appear in court on the first morning of the trial. Under certain circumstances, failure to appear at trial may constitute a waiver of the right to a jury trial. 9 Wright & Miller,
 
 supra,
 
 at § 2321. In this case, however, we do not rely on this set of circumstances as constituting a waiver because it is plain to us that Bach’s failure to timely object at any time during the course of the nonjury trial constitutes a waiver of that right. Bach did not raise this issue until after the trial, and the district court did not abuse its discretion in holding that Bach had waived his right to trial by jury.
 

 IV
 

 In conclusion, the district court erred in determining the dischargeability of Bach’s debts under 11 U.S.C. § 523, and we reverse and set aside that part of the district court’s judgment. With respect to the other issues raised, the district court’s findings of Bach’s involvement in the RICO violations were not clearly erroneous, and we affirm the money judgment against Bach on that basis. Finally, the district court did not abuse its discretion in denying Bach’s motion for a continuance or in denying his posttrial motion for a new trial before a jury. Accordingly, the judgment of the district court is
 

 REVERSED IN PART AND AFFIRMED IN PART.
 

 [1]
 

 . Tex.Bus. & Com.Code Ann. § 27.01 (Vernon 1968) provides in pertinent part:
 

 Section 27.01. Fraud in Real Estate and Stock Transactions
 

 (a) Fraud in a transaction involving real estate or stock in a corporation or joint stock company consists of a
 

 (a) false representation of a past or existing material fact, when the false representation is (A) made to a person for the purpose of inducing that person to enter into a contract; and
 

 (B) relied on by that person in entering into that contract....
 

 [2]
 

 . Bach also challenges the district court’s conclusion that a "security” was involved in the joint venture agreement. It is indisputable that an investment in the form of a general partnership or a joint venture is not sheltered from the reach of the federal securities laws.
 
 Williamson v. Tucker,
 
 645 F.2d 404, 422 (5th Cir.1981). Under
 
 Williamson,
 
 we hold that the Landmark joint venture was a "security" within the meaning of the federal and state securities laws.