E. GRADY JOLLY, Circuit Judge:
This unrelenting battle between the Brownings and the Holloways, which began in 1979, is a familiar fray to this court. It has been marched up the hill to us several times before. We march it back down once again.
The state court judgment, which the Brownings seek to enforce in the bankruptcy court against Holloway and his assets, may involve more than $100,000,000, and we suppose, would pretty much wipe out Holloway if enforced. Yet for various reasons he has never had consideration, by either the federal or state courts, of the merits of his colorable claim that the state court judgment resulted from the corrupt abuse of the judicial process. Today we remand to allow consideration of his claim that the state court judgment was procured by fraud. We reject, however, each and every other argument he makes and trust that we have sufficiently narrowed this case so that the litigation can be concluded with the disposition of this single issue.[1]
I
Renditions of the facts in this case and related cases already fill many pages of the federal reporter system,[2] but we repeat them here for the sake of clarity.
“The complicated history of this case begins on September 12, 1979, when the Brownings ... filed suit against Humble [Exploration Co. Inc.] (Humble), [Pat] Holloway (Holloway), and others in the 193rd Judicial District Court of Dallas County, Texas, seeking, as the alleged equitable owners of substantially all the assets of Humble and Holloway, the imposition of a constructive trust on Humble’s and Holloway’s assets, actual and exemplary damages, and the appointment of an interim receiver to manage the disputed assets. Sterling Pipeline Company was later added to the case. (The lawsuit is hereinafter referred to as the ‘1979 case.’) On November 19, 1979, Humble and Holloway filed Chapter 11 voluntary bankruptcy petitions and removed the 1979 case to the United States Bankruptcy Court for the Northern District of Texas pursuant to 28 U.S.C. § 1478(a).
“The parties entered a ‘Stipulation and Agreement on Manner in Which Controversy Shall be Heard, Determined and Liquidated,’ which was approved by the bankruptcy court and annexed to the court’s January 18,1980 ‘Order Remanding Causes of Action and Modifying Automatic Stay.’ The remand order remanded the 1979 case to the 193rd Judicial District Court pursuant to the terms of the stipulation and agreement, and modified the automatic stay to permit trial of the case upon remand, subject to the terms of the stipulation and agreement. The stipulation and agreement provided, among other things, that upon remand of the case the parties would request the presiding judge of the administrative judicial district to assign a visiting or retired state judge to hear the consolidated cases.
“The case was remanded and the presiding judge assigned it to a retired state judge who ordered enforcement of a prior settlement agreement. In 1981, the Court *338 of Appeals for the Fifth Supreme Judicial District of Texas (the ‘Texas court of appeals’) reversed the order enforcing the settlement agreement and remanded the case for a jury trial. The Texas Supreme Court found no reversible error. Upon remand from the state appellate courts, the 1979 case was assigned to a different retired state judge who entered an order nullifying the prior settlement agreement.
“On May 26, 1982, a group of investors sued Holloway and Humble in the 162nd Judicial District Court of Dallas County, Texas, Judge Dee Brown Walker presiding, claiming that Humble had wrongfully shut in over 150 oil and gas wells jointly owned by the investors and Humble. This suit is alleged by Holloway to have been brought pursuant to the conspiracy, solely for the purpose of creating a case before Walker into which the 1979 [case] could be consolidated, in violation of the agreement that restricted the judge who could hear the 1979 [case] to one who had retired or was visiting the judicial district. The investors sought the appointment of a receiver over Humble’s assets. (The case is hereinafter referred to as the ‘1982 case’.) The Brownings were named as defendants in the 1982 case because of their claim to ownership of Humble’s and Holloway’s assets. The 1982 case was removed to the bankruptcy court and remanded to Judge Walker’s court on the same day.
“On May 28, 1982, Judge Walker appointed a receiver in the 1982 case over Humble’s and Holloway’s assets. Thereafter ‘ensued a somewhat dizzying sequence of state court orders,’ most of which were issued by Judge Walker, and recounted in Browning v. Navarro, 37 B.R. 201, 205-06 (N.D.Tex.1983), which resulted in the transfer and consolidation of the 1979 case into the 1982 case before Judge Walker in the 162nd Judicial District Court. On June 24, 1982, the May 28,1982 receivership order having been vacated by the state court of appeals,[3] Judge Walker granted the Brownings’ request for a separate and expedited trial of the 1979 case. On August 26, 1982, after a month-long trial, judgment was entered in the 1979 case for the Brownings, imposing a constructive trust on Humble’s and Holloway’s assets and awarding the Brownings actual damages of $72,000,000 and exemplary damages of $10,000,000.
“On November 18, 1982, Holloway and Humble brought [a section 1983 action] (the ‘civil rights case’) against Judge Walker, the Brownings, legal counsel for the Brownings and many others, alleging that all the defendants had conspired to violate Holloway’s and Humble’s civil rights in the 1979 case. The complaint allege[d] that Walker and the other defendants conspired to seize control of Humble through the abuse of Walker’s judicial office. Holloway contended] that pursuant to the conspiracy Walker arranged to have the 1982 case brought before his court contrary to the usual procedure for assigning cases, that Walker thereafter arranged to have the 1979 and the 1982 case consolidated in his court, that he imposed receiverships on Humble’s and Holloway’s assets, defied a mandamus order of the Texas Court of Appeals to refrain from interfering in Humble’s business, appointed an incompetent receiver for Humble, dismissed many Humble personnel [including attorneys], posted guards at Humble’s headquarters to seize the building, [prohibited release of corporate and legal files during the trial], and, in a hotel near the courthouse, conducted meetings regarding Humble’s business, all in furtherance of the conspiracy. Holloway contended] extensive damage was done to him and Humble through Walker’s pernicious actions ... [on appeal, we affirmed the district court’s grant of summary judgment, holding that its allegations did “not amount to a violation of constitutional due process” 784 F.2d at 1294].
“After Holloway and Humble filed the civil rights case they perfected an appeal from the judgment in the 1979 case to the Texas court of appeals. The Texas court *339 of appeals was the appropriate Texas appellate court to hear the appeal of a case from Judge Walker’s court. However, neither Humble nor Holloway posted a supersedeas bond to stay execution of the judgment in the 1979 case pending their appeal.
“The Brownings then brought [the] action [in which this appeal is taken] in the United States District Court (the ‘turnover action ’) to obtain possession of Holloway’s and Humble’s assets which, according to the judgment in the 1979 case, were being held for their benefit. Humble, Holloway and their trustee, Don Navarro, refused to turn the assets over to the Brownings. They argued that the proceedings before Judge Walker, an active judge, were void because the 1979 case was tried in contravention of the bankruptcy court’s original remand order. The United States District Court granted a summary judgment in favor of Navarro and held that the trial of the 1979 case before Judge Walker was void. This court, however, reversed the district court’s determinations and held that the trial before Judge Walker was not void because the remand order had been satisfied. Browning v. Navarro, 743 F.2d 1069 (5th Cir.1984).
“The appeal of the 1979 case was pending in the Texas court of appeals while the turnover action was being litigated , in the United States District Court. The Texas court of appeals, however, believed that the turnover action constituted a collateral attack on Judge Walker’s judgment in the 1979 case. Therefore, the Texas court of appeals dismissed Humble’s and Holloway’s appeal[4] because it did not believe Humble and Holloway were entitled to two appeals from the judgment in the 1979 case. However, following this court’s reversal of the district court’s decision in the turnover action, the Texas court of appeals vacated its prior order dismissing the appeal of the 1979 case____”[5]
“After the reversal of the district court’s decision in the turnover action, the Texas court vacated its prior order, of dismissal. However, the appellate court, sitting en banc, later reinstated the order of dismissal. Humble Exploration Co. v. Browning, 690 S.W.2d 321 (Tex.Ct.App.1985) (en banc), reinstating 677 S.W.2d 111 (1984). With the Texas Supreme Court’s denial of Humble’s and Holloway’s application for writ of error, it appears that appellees have no further recourse in the state courts.”[6]
In reversing the district court’s opinion in the turnover action, we remanded to the district court for proceedings consistent with our opinion. On remand, the district court entered a series of orders and opinions leading up to this appeal. By opinion and order dated March 21,1985, the district court considered various motions filed by all parties. The court noted our opinion and stated: “This court will not entertain further arguments addressed to the contention that the state proceedings were void.” On April 22, 1985, the district court, based on our holding that the bankruptcy court was relieved of jurisdiction once the remand became final, rejected Holloway’s arguments to enjoin enforcement of the judgment. By order dated June 28, 1985, the district court also rejected Holloway’s argument that the supremacy clause precludes enforcement of the state court judgment. On May 6, 1986, Holloway moved for summary judgment on the grounds now advanced on appeal. His motion was supported by a lengthy brief and numerous affidavits, alleging, inter alia, that the state court judge and the attorneys for the Brownings colluded to deprive him of a fair and complete trial by corruptly abusing the judicial process. On May 16, 1986, before any party responded to Holloway's motion, the district court entered an order denying the . motion, concluding that Holloway’s claims were without merit. The district court did not address or consider any of the claims that Holloway raises as they relate *340 to corrupt abuse of the judicial process. This appeal and cross-appeal followed.[7]
II
First we must determine the nature of the relief sought by the Brownings and the permissible defenses to that relief. The Brownings seek a declaratory judgment “(a) that the effect of the Judgment in the Remanded State Court Litigation [the 1979 suit] as against ... Humble and Holloway and Robbie [Holloway, Holloway’s former wife], and each of them, and their respective bankrupt estates is to impress the property described in the Judgment with a constructive trust in favor of the Brownings; and (b) to decree all necessary and proper relief based on said declaratory judgment as may be necessary to effectuate the legal and equitable relief to which the Brownings are entitled.” With regard to the injunctive relief sought in the complaint, the Brownings request that the district court enjoin Holloway from further use of the property in question, from pursuing other relief against the Brownings and from taking “any further action” in an attempt to interfere in any way with the Brownings’ “ownership or operation of” the property.
We have previously labeled the suit giving rise to this appeal as the “turnover suit.” Under the Bankruptcy Code, however, a turnover suit is one in which a trustee or custodian seeks to obtain property of the estate that is in the possession of a third party. See 11 U.S.C. §§ 542 and 543. Here, the Brownings have sued the debtor and trustee in bankruptcy to “turn over” property alleged to belong to the Brownings. This is therefore not a true turnover suit within the meaning of the Code.
Rather this suit is one for enforcement of a judgment brought pursuant to the general bankruptcy jurisdiction of the district court. The judgment at issue here awarded damages against the debtor and imposed a constructive trust on certain property that is the subject of the bankruptcy proceedings. In this action the Brownings seek to enforce that judgment against the debtors and the bankruptcy estate, that is, practically speaking, to collect the damages awarded and to take possession of the property included in the constructive trust.
Accordingly, we treat this case as one for enforcement of a judgment and consider the defenses that Holloway asserts against enforcement.[8]
Ill
Holloway contends that the supremacy clause, the full faith and credit clause, and the principles of res judicata prohibit the federal district court from enforcing this state court judgment because the state court proceedings, in certain limited respects, were conducted in violation of the provisions of the stipulation and agreement of the parties that was incorporated into the final order of the bankruptcy court. Because the state court proceeding was not conducted in full accordance with the bankruptcy court’s order, Holloway argues that the state court judgment resulting from these proceedings somehow violates the full faith and credit clause, and the supremacy clause, and, further, is barred by the doctrine of res judicata. The Brownings contend, however, that our previous opinion in this case decided the issue of conflict between the bankruptcy court order and state court proceedings, and further consideration is thus barred by the “law of the case” doctrine. See Browning v. Navarro, 743 F.2d 1069 (5th Cir.1984).
*341 Although we find it unnecessary to consider the “law of the case” doctrine, it is clear to us that our previous panel effectively disposed of Holloway’s arguments. In our previous opinion, we made it clear beyond any doubt whatsoever, that the state court had jurisdiction to enter the judgment before the court today. We considered the language of the stipulation and agreement and held that when the case was finally assigned to a visiting state court judge, the conditional remand, as embodied in the bankruptcy court order, became final. At that point,
with the condition satisfied, the remand given effect, the Bankruptcy Court divested of jurisdiction, and the state court reinvested with jurisdiction, the subsequent assignment of the case to an active state district judge could not ... operate to divest the state court of jurisdiction, even had the parties intended to do so.
743 F.2d at 1082.
Implicit in this holding is that, since the bankruptcy court order cannot bar the state court’s jurisdiction to enter judgment, the judgment is valid unless the judgment itself exceeds the grant of authority allowed by the order of the bankruptcy court. Holloway does not contend, and he cannot contend, that the judgment in any respect exceeds or conflicts with the bankruptcy court order; the order expressly contemplated such a judgment on the merits of the lawsuit. His argument is that because the state court appointed receivers during the course of the proceeding and required a supersedeas bond for appeal after the proceeding, the judgment that results from the flawed proceedings is somehow in conflict with the bankruptcy court order. This argument plainly has no merit, since the state court with the jurisdiction to do so, entered a judgment that does not in any way conflict with the bankruptcy court order.[9] There being no conflict between the bankruptcy court order and the judgment at issue here, Holloway’s arguments with respect to the supremacy clause and the full faith and credit clause fail; since there is, of course, no contention that the bankruptcy court purported to adjudicate the merits of the Brownings’ claims against Holloway, the principles of res judicata do not apply.
IV
A.
Holloway’s remaining arguments comprise but one cognizable issue, that is, whether the state court judgment is enforceable in bankruptcy court.[10] That is *342 sue is controlled by Heiser v. Woodruff, 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970 (1945), in which the Supreme Court considered the defenses available to an action to enforce a judgment in bankruptcy court. There, Heiser, a creditor, sought in bankruptcy court to enforce against Woodruff, the debtor, a judgment which was obtained prior to initiation of bankruptcy proceedings. Id. at 728, 66 S.Ct. at 854. The judgment resulted from a suit filed in 1935 by Heiser against Woodruff for alleged conversion of jewels with a stated value of $164,000. Woodruff had moved to set aside the default judgment entered against him. The motion had been denied with respect to the adequacy of the service of process, but, on stipulation of the parties, the trial court had held a hearing to determine the value of the jewels and had found that the stated value was correct. Wood-ruff had not appealed that judgment.
In 1939 Woodruff filed for bankruptcy and Heiser submitted the judgment as a claim against the bankruptcy estate. The trustee obtained permission of the bankruptcy court to file a separate suit in district court to have Heiser’s judgment set aside on the ground that service of process was improper, that the complaint failed to state a claim, that “ ‘a fraud was practiced upon the ... court with respect to the entry of said judgment’ ” and that Wood-ruff was prevented from presenting evidence at trial “ ‘by reason of fraud, accident, surprise and excusable neglect.’ ” Id. at 730, 66 S.Ct. at 855. Specifically, the suit alleged that the proof of value of the jewels was fraudulent. Id. The trustee’s suit was not successful, and the court of appeals affirmed the district court’s dismissal of the action, holding that the service of process was valid and that “the charge of fraud was denied and unsupported by proof, adding that ‘that ground of appellant’s motion appears to have been abandoned.’ ” Id. at 731, 66 S.Ct. at 855.
Following the trustee’s unsuccessful attempt to set the judgment aside, Heiser again sought to enforce the judgment in the bankruptcy court. The bankruptcy court granted enforcement and held that the previous attacks on the judgment were res judicata to any further challenge. The Tenth Circuit Court of Appeals, however, reversed, holding that a bankruptcy court could “go behind the prior adjudication of the validity of the judgment and decide for itself the questions previously litigated.” 327 U.S. at 728, 66 S.Ct. at 854.
On writ of certiorari, the Supreme Court held that a bankruptcy court may consider challenges to judgments of other courts only “on the ground that the purported judgment is not a judgment because of want of jurisdiction of the court which rendered it over the persons of the parties or the subject matter of the suit, or because it was procured by fraud of a party.” Id. at 736, 66 S.Ct. at 858. The bankruptcy court’s review of these issues is limited, however, by the rules of res judicata and the bankruptcy court may not reexamine these issues if already determined by a prior judgment. Id. Therefore, the trustee in Heiser could not raise the issue of fraud as a defense to enforcement of the judgment since that issue had been previously resolved.
Under Heiser, therefore, Holloway may challenge the state court judgment only with respect to jurisdiction and fraud, and then only if not barred by application of the doctrine of res judicata. As earlier noted, we have previously established that the state court had jurisdiction. We are therefore concerned only with whether Holloway may attack the judgment with respect to fraud.
B.
Heiser does not define “judgment procured by fraud.” The fraud involved in Heiser is of a different genre than presented by the allegations made in this case. Misrepresentation of value and reliance on that misrepresentation for entry of a judgment is closer to the traditional common law fraud than is set out in the allegations made by Holloway, which may not be so quickly recognized under the term “fraud.” The judgment against Holloway can be said to be procured by fraud only if fraud can be defined to include corrupt abuse of the *343 judicial process. In determining that question, we find some direction from review of cases which, in other contexts, have utilized the courts’ equitable power to set aside a judgment on the ground of fraud.
For our purposes today, two United States Supreme Court cases, in addition to Heiser, are instructive. We look first to an 1878 case, United States v. Throckmorton, 98 U.S., (8 Otto) 61, 25 L.Ed. 93 (1878). The United States sought to set aside a confirmation of a Mexican land grant in California to one Richardson on the ground that the district court judgment confirming the grant, entered some twenty years earlier, had been obtained by fraud. The United States asserted that the grant document had been falsely and fraudulently antedated so as “to impose on the court the belief” that it was made at a time when Mexico governed California. In addressing whether the judgment could be set aside, the Court first established that the general rule was to respect finality of judgments over a doctrine that fraud may vitiate judgments. Having noted this rule, however, the Court stated:
But there is an admitted exception to this general rule, in cases where, by reason of some thing done by the successful party to a suit, there was, in fact, no adversary trial or decision of the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client’s interest to the other side — these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing.
Id. at 65.
The Court made clear, however, that a judgment based on a fraudulent instrument or perjured evidence was not within the exception; indeed, a judgment could not be set aside for any ground “which was actually presented and considered in the judgment assailed.” Id. According to Justice Miller’s reasoning, in order to collaterally attack the judgment, it must have been obtained by fraud, as distinguished from having been based on fraud.
Particularly apposite to the case we consider today, the Throckmorton Court noted that the United States as complainant had made one colorable allegation, quite distinguishable from the claim that the judgment was based upon a fraudulently procured document. . This claim of substance was that one Howard, an agent of the government in the earlier proceedings, knew of the fraudulent character of the grant document and failed to bring forward that fact even though it was his obligation, as an officer of the court, to do so. There was, however, a missing link to complete the cause of action:
If there had been a further allegation that Howard was then interested in the Richardson claim, or that Richardson had bribed him, or that from any corrupt motive he had betrayed the interest of the Government, the case would have come within the rule which authorizes relief.
Id. at 69. There was, however, no such allegation made, and the Supreme Court denied relief.
The second case to which we turn for some direction is Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944). Hazel-Atlas contended that the judgment in this patent case had been obtained by fraud because Hartford had foisted upon the court, in support of its claim of infringement, a spurious publication. Although actually written by one of Hartford’s attorneys, it purported to be an objective and impartial study. On the face of these ele *344 mental facts, if the Court had strictly applied the rationale in Throckmorton, it might have dismissed the case; there would seem to be scant relevant difference in a judgment based on a falsified document and one based on a falsified professional article. Referring to the judgment as “fraudulently begotten,” the Court, however, made this distinction:
This is not simply a case of a judgment obtained with the aid of a witness who, on the basis of after-discovered evidence, is believed possibly to have been guilty of perjury. Here, ... we find a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals. Proof of the scheme, and of its complete success up to date, is conclusive.
Id. at 245-46, 64 S.Ct. at 1001 (citations omitted).
Although Hazel-Atlas presents facts more akin to the elements of common law fraud, i.e., misrepresentation and reliance, than we have before us, it involves an additional element that is alleged here: the involvement of parties’ attorneys. Indeed, Hazel-Atlas might be read to suggest that once the determination is made that officers of the court have corruptly abused the judicial process, the court is not required to examine the effect that such conduct might have had on the ultimate judgment, but rather the court may rely on such conduct alone to set aside the judgment. We make this observation because the lower court had denied relief on the ground that the falsified article was not basic to its decision. The Supreme Court, however, noting that the attorneys had urged the falsified article upon the court and had prevailed, held that they “are in no position now to dispute its effectiveness.” Id. at 247, 64 S.Ct. at 1002.
So let us try to summarize what applicable lessons we see in these Supreme Court cases that we have examined. Throckmorton stands clearly for the proposition that intrinsic fraud, that is, fraudulent evidence upon which a judgment is based, is not grounds to set aside a judgment. It also makes clear that extrinsic fraud, that is, fraud that was not the subject of the litigation, that infects the actual judicial process, is grounds to set aside a judgment as procured by fraud.[11] Heiser, examining the equitable power of bankruptcy courts to set aside a judgment, did not distinguish between extrinsic and intrinsic fraud, and seems to be authority that a bankruptcy court, in protecting the myriad parties asserting legitimate claims against limited assets, may set aside a judgment based only on intrinsic fraud. The clear implication of the Heiser holding is, of course, that the bankruptcy court may also set aside judgments based on extrinsic fraud, the more egregious of the offenses. Hazel-Atlas is to be read as an expansion of the limits set by Throckmorton in attacking judgments generally, but not as granting other courts as broad a power to question judgments as Heiser grants bankruptcy courts. Hazel-Atlas allows a judgment to be attacked on the basis of intrinsic fraud that results from corrupt conduct by officers of the court.[12] *345 In any event, it is clear to us from these cases that in this bankruptcy proceeding, the genre of fraud alleged here, that is, the corrupt abuse of the judicial process, can serve as a basis to collaterally attack the state court judgment.
C.
We turn now to apply the composite rationale and teachings of these cases to the case before us, recognizing that cases of this kind are heavily influenced by the individual facts of each case. In examining these Supreme Court authorities, as well as the cases to which we refer in note 12, we conclude that to satisfy his burdén, Holloway must demonstrate that the judgment, was obtained as the result of a scheme or collusion that is designed to influence corruptly the proceedings, or to inhibit the ability of an adverse party to fully present his case or defense, and which has the effect of foreclosing to him the opportunity to have a fair and complete trial. The positions and roles of the participants as officers of the court, and the result of the scheme are of the utmost significance in determining whether the judgment has been procured or obtained by fraud. To set aside the judgment, the court must be convinced that the trial was rendered so fundamentally unfair by the scheme or collusion, that the court lacks confidence that the judgment is soundly based on law and fact.
D.
Turning now to the record in this case, we find that in his pleadings, affidavits and briefs Holloway has made allegations that, if proved, may meet the test that we have defined above.
The affidavits submitted by Holloway in support of his motion for summary judgment before the district court contain sworn statements tending to show: that the Brownings’ attorneys clandestinely acted to have their case consolidated with the 1982 case and, behind Holloway’s back, arranged to have the case set before Judge Walker; that Judge Walker was known to be under the control of the Brownings’ attorneys who often bragged about this fact; that the Brownings’ attorneys bragged about plans to “gut” Holloway in Judge Walker’s court; that thereafter Judge Walker engaged in numerous private conferences with the Brownings’ attorneys regarding the Brownings’ attempts to take control of Humble’s and Holloway’s other assets; that the Brownings’ attorneys and Judge Walker engaged in private conferences during trial in surreptitious circumstances, and that they colluded to give the jury instructions favorable to the Brownings; that Holloway and his attorneys were not given proper notice of meetings relating to the trial and were therefore denied the opportunity to attend; that Holloway and his attorneys were denied *346 access to documents and files necessary to their defense by the receiver who removed the documents from Humble’s offices; that Holloway was denied the right to effective counsel by Judge Walker’s mid-trial order discharging Holloway’s and Humble’s attorneys; that one of the Brownings’ attorneys acted as bailiff for the jury during the course of the trial; and that during the course of the trial, the Brownings’ attorneys were actively representing Judge Walker in other matters. In short, if the statements made in the affidavits are ultimately credited by the district court, those statements are clearly sufficient to establish collusion between the Brownings’ attorneys and Judge Walker to deny Holloway a fair and impartial trial.
E.
Of course the principle of res judicata, if applicable, would bar consideration of these allegations of fraud. See Heiser, 327 U.S. at 736, 66 S.Ct. at 857. The district court denied Holloway’s claims before the Brownings were afforded an opportunity to amend their pleadings to assert res judicata or otherwise to respond to the affidavits submitted by Holloway. The Brownings will now have an opportunity to amend their pleadings and, if appropriate, to file responsive affidavits.[13]
F.
Finally, if the district court determines that Holloway has satisfied his burden with respect to whether the judgment was procured by fraud and that res judicata does not bar consideration of that issue, the court must then determine the extent to which the judgment is to be enforced. In Hazel-Atlas, the Supreme Court emphasized the equitable nature of the remedy of setting aside a judgment. That equitable power gives the district court the ability to fashion the appropriate relief which could be complete or partial refusal to enforce the judgment. If the state court judge is proved to have significantly corrupted his role as an impartial adjudicator, grounds for setting aside the entire judgment, including the jury verdict,[14] may be compelling, irrespective of whether such corruption can be said to have directly affected the jury and its consideration of the merits of the case. See, e.g., Hazel-Atlas, 322 U.S. at 248, 64 S.Ct. at 1002. This is a decision to be made by the district court, however, based on the facts adduced in the proceedings on remand.
V
In our remand we would like to make several points clear: there are no live issues in this case whatsoever except (1) whether the judgment may be set aside because it was procured by fraud; (2) whether the doctrine of res judicata bars relief, and, (3) based on resolution of these issues, whether the state court judgment may be enforced. Although much of the evidence that has been considered by the district court in other contexts will be relevant, and must be considered again on remand, no other theory, claim or cause of action that has been raised in these proceedings is any longer viable. We reiterate that we have considered all issues in this case and hold that the only defense that remains available to Holloway to deny enforcement of the state court judgment is whether the judgment was procured by fraud as defined within the parameters of this opinion.
In closing, let us say that we sympathize with all of the parties, all of the courts and all of the judges who have surely tired of these prolonged proceedings. We wish there were another course, but this case must be remanded for further consideration consistent with this opinion.[15]
*347 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

. Holloway’s appeal is actually a cross-appeal; the Brownings initially appealed the district court's dismissal of their claim against the bankruptcy trustee, Navarro, regarding Navarro’s conduct as trustee. Prior to argument, the parties informed the court that settlement negotiations were in progress and requested that argument be postponed. We therefore do not consider those issues.

. See Holloway v. Walker, 784 F.2d 1287, reh’g denied, 790 F.2d 1170 (5th Cir.1986); Holloway v. Walker, 765 F.2d 517 (5th Cir.1985); Browning v. Navarro, 743 F.2d 1069 (5th Cir.1984) (reversing 37 B.R. 201 (N.D.Tex.1983)).

. Humble Exploration Co. v. Fairway Land Co., 641 S.W.2d 934 (Tex.App.-Dallas 1982 writ ref’d n.r.e.) enforced, 641 S.W.2d 941 (Tex.App.—Dallas 1982, no writ).

. Humble Exploration Co. v. Browning, 677 S.W.2d 111 (Tex.App.-Dallas, 1984, no writ).

. Holloway v. Walker, 765 F.2d 517, 519-21 (5th Cir.1985).

. Holloway v. Walker, 784 F.2d 1287, 1290 (5th Cir.1986).

. As stated in footnote 1, the issues raised in the appeal perfected by the Brownings that relate to the liability of the bankruptcy trustee are not before us. Because we do not consider those issues in this opinion, we have omitted discussion of the orders of the district court relating thereto.

. Such an action is not precluded by the Anti-Injunction Act, 28 U.S.C. § 2283, since the district court is sitting as a court in bankruptcy. 11 U.S.C. § 105 authorizes a bankruptcy court to stay state court actions. See 11 U.S.C. § 105(a); H.R.Rep. No. 595, 95th Cong., 1st Sess. 316 (1977). See also 2 Collier on Bankruptcy ¶ 105.-02 (1987).

. Casperone v. Landmark Oil & Gas Corp., 819 F.2d 112 (5th Cir.1987), cited by Holloway in postargument briefs, supports our position. In Casperone, the bankruptcy court entered an order modifying the automatic stay "for the purpose of liquidating the claim only.” 819 F.2d at 114. The trial court, however, not only liquidated the claim but also determined the nondischargeability of the claim. Id, We set aside only the specific part of the judgment that exceeded the bankruptcy court's modification order. Casperone therefore does not support Holloway's argument that any deviation from the terms of the bankruptcy court's remand order voids the entire judgment.

. Holloway’s remaining arguments consist of the following: first, that Judge Walker’s mid-trial order discharging Holloway’s and Humble’s attorneys and enjoining them from Humble’s offices, and therefore from access to trial files, violated Holloway’s constitutional rights and rendered the judgment unenforceable; second, that the state court proceedings are unenforceable because they were infected with fraud and bias as the result of an illegal conspiracy between the Brownings' attorneys and the judge; third, that the state court judgment is not enforceable in bankruptcy court because it is not enforceable in Texas courts because the trial judge was biased in favor of the Brownings; and, fourth, that Judge Walker set a supersedeas bond in an "impossibly high amount,” which has the effect of foreclosing Holloway's ability to appeal the judgment. These arguments are related directly and indirectly to the question whether the judgment was procured by fraud. We reject in toto, however, each theory or basis for defense except as it, and facts supporting it, relate to a claim that the judgment was procured by fraud, as later explicated in this opinion.
Holloway also contends that he was denied a direct appeal of the state court judgment in violation of his constitutional rights. In this argument, he does not allege that his inability to appeal was the result of any action by the Brownings or Judge Walker, but rather merely the product of the operation of Texas appellate procedural rules. We rejected this argument in Holloway v. Walker, 784 F.2d 1287, 1293 (5th Cir. 1986), and therefore are precluded from considering it here.

. The distinction that Throckmorton made between intrinsic and extrinsic fraud may have become questionable as early as 1891 when, in Marshall v. Holmes, 141 U.S. 870, 12 S.Ct. 62, 35 L.Ed. 870 (1891), the first Mr. Justice Harlan seems to have ignored, if not overruled, the distinction. Since then, Heiser seems to have ignored the distinction, although Hazel-Atlas appears to recognize the distinction without denominating it as such. Many jurisdictions still recognize and speak of the distinction although it is not held in high favor by some commentators. See C. Wright & A. Miller, Federal Practice & Procedure § 2868 (1973). In deciding whether Holloway's allegations are sufficient for purposes of applying Heiser, however, the distinction has no determinative importance.
In passing, we note that in Marshall the federal court enjoined enforcement of a state court judgment, an exercise of a federal judicial power that is very much in doubt today because of the modern interpretation of the Anti-Injunction Act, 28 U.S.C. § 2283. The Anti-Injunction Act does not, however, bar a federal court sitting in bankruptcy from enjoining a state court proceeding. See supra note 8.

. Since Hazel-Atlas, other courts have contributed to the development of criteria for use in determining whether a particular judgment should be set aside on the basis of fraud. The most commonly used definition is that found in Moore’s Federal Practice:
Fraud upon the court should embrace only that species of fraud which does or attempts *345 to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.
7 Moore, Federal Practice ¶ 60.33 at 515 (1971). See, e.g., Kerwit Medical Products, Inc. v. N. & H. Instruments, Inc., 616 F.2d 833 (5th Cir.1980). These cases typically arise from a motion submitted pursuant to Fed. Rule of Civil Procedure 60(b), which provides: "This rule does not limit the power of the court to entertain an independent action to ... set aside a judgment for fraud upon the court.” The comments to Rule 60 state that the rule leaves unaffected the court’s equitable power to set aside a judgment on the basis of fraud. These cases therefore use the same equitable power described in Heiser. As Moore's definition indicates, the fraud necessary to set aside a judgment must be "most egregious conduct.” Williams v. Board of Regents, 90 F.R.D. 140 (M.D.Ga.1981) and most courts have stated that this conduct generally includes bribery of a judge, employment of counsel to influence the court, or fabrication of evidence by a party in which an attorney has been implicated. See, e.g., Williams at 142; United States ex rel. Bonner v. Warden, 78 F.R.D. 344 (N.D.Ill.1978). The courts have uniformly held that perjury of a single witness, false evidence (in the absence of attorney involvement) or mere nondisclosure are insufficient to establish fraud upon the court. See Dankese Engineering, Inc. v. Ionics, Inc., 89 F.R.D. 154, 158 (D.Mass.1981); Kerwit Medical Products, Inc. v. N. & H. Instruments, Inc., 616 F.2d 833 (5th Cir.1980). Other factors have been held to be significant. For example, in Dankese, the court held that the fraud must be a deliberately planned and executed scheme, a factor of significance in Hazel-Glass.

. On remand the district court, we are sure, will also allow the trustee to participate to protect the interests that he represents.

. The final judgment in this case resulted from a jury verdict as well as an order fashioned by the state court judge.

. In view of our disposition of Holloway’s cross-appeal, we deny the Brownings' motion for injunctive relief.