In re Vern O. LAING, Debtor.

Lawrence A.G. JOHNSON; Don Bradshaw, Plaintiffs–Appellants,

v.

Vern O. LAING, Defendant–Appellee.

No. 91–5031.

United States Court of Appeals, Tenth Circuit.

Sept. 24, 1991.

Lawrence A.G. Johnson, Tulsa, Okl., pro se and for plaintiff-appellant Don Bradshaw.

Kenneth V. Todd, Tulsa, Okl., for defendant-appellee.

Before SEYMOUR and EBEL, Circuit Judges, and BABCOCK,[*] District Judge.

EBEL, Circuit Judge.

This is an appeal[1] from a district court order affirming the decision of the bankruptcy court to allow, but reduce in amount, a claim against debtor Vern O. Laing. The claim is based on an obligation previously reduced to judgment in a state (Oklahoma) court action brought against Laing by appellant Don Bradshaw, assignee of the note evidencing Laing's obligation. The overriding issue raised on this appeal is whether the lower courts erred in denying preclusive effect to the state court judgment by re-determining Laing's liability on the note—under primarily equitable, rather than legal, principles—and resolving appellants' claim[2] accordingly.

In 1983, Laing purchased an airplane with the proceeds of a $75,000 note given to the Bank of Oklahoma, which also acquired a security interest in the airplane. Shortly after the purchase, Laing and his then-attorney Johnson entered into a joint venture ownership agreement that granted Johnson a one-half interest in the airplane but, evidently in exchange for contemplated professional services by Johnson, held him harmless on Laing's obligation to the Bank of Oklahoma.

Years later, Johnson filed suit in state court to dissolve the joint venture agreement. That suit concluded with a judgment giving Laing the option of: (1) paying Johnson $31,000 for his interest in the airplane; (2) accepting $31,000 from Johnson in exchange for Laing's interest in the airplane free and clear of all encumbrances; or (3) taking no action, in which case Johnson would be granted an in rem judgment against the airplane subject, of course, to the security interest held by the Bank of Oklahoma. The third course was taken, but just before Johnson acquired the airplane by foreclosure sale (affirmed by the state supreme court), Laing defaulted on his note to Bank of Oklahoma, which brought suit against Laing for recovery on the note and against Laing and Johnson to foreclose their interests in the airplane.

About this time, Bradshaw, a friend of Johnson's, took an assignment of the Laing note and associated security interest held by Bank of Oklahoma in exchange for $58,846.89, which he obtained by giving Liberty Bank of Owasso, in turn, his note and a security interest in the airplane. Bank of Oklahoma then dismissed its suit and Bradshaw, represented by Johnson, brought his own action to collect on the Laing note,

[*] Honorable Lewis T. Babcock, District Judge, United States District Court for the District of Colorado, sitting by designation.

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

[2] Although the claim in dispute was asserted individually by appellant Bradshaw as (sole) judgment creditor on the note given by Laing, the lower courts treated the claim as jointly asserted by Bradshaw and appellant Johnson on the basis of their unity of interest and extensive mutual involvement in the subject matter. In the absence of any objection by the parties, we see no reason to deviate from this approach, which, in any event, does not affect our analysis of the issues presented for review.

though Bradshaw did not also seek to foreclose on the airplane. Shortly thereafter, Johnson sold the airplane and loaned Bradshaw the money to pay off the note he had given Liberty Bank of Owasso. This accomplished, Bradshaw and the bank released their security interests in the airplane.

At this point, only Bradshaw's action to collect on the Laing note remained to be resolved. Laing asserted counter- and third-party claims against Bradshaw and Johnson, however, alleging, among other things, conspiracy and breach of fiduciary duty in connection with the events through which Bradshaw acquired and sought to enforce Laing's obligation while releasing, for Johnson's benefit, his interest in the collateral securing that obligation. The state court granted summary judgment for Bradshaw against Laing on the note and for Bradshaw and Johnson on Laing's counter- and third-party claims. Laing did not appeal this disposition.

Instead, Laing filed for bankruptcy, requiring Bradshaw to file a proof of claim based on the state court judgment. Laing objected, again asserting that the underlying, allegedly collusive conduct of Bradshaw and Johnson should preclude recovery on Laing's note. In its initial memorandum decision, the bankruptcy court found "that the actions of Johnson and Bradshaw violate the fiduciary duty that Johnson owed Laing as his attorney and as his joint venturer, and, if allowed to stand, would unjustly enrich Johnson." Memorandum on Objection to Claim of Bradshaw/Johnson, filed June 16, 1989, at 2. It also found, however, "that both parties breached their fiduciary duty that they owed to the other" and that "Laing started the unethical conduct when ... he intentionally and deliberately ceased making payments on the secured debt...." *Id.* Consequently, the bankruptcy court simply looked past Bradshaw's legal claim and fashioned an equitable compromise to "put the parties back to where they were [before dissolution of the joint venture agreement]." *Id.* at 7. In brief, the bankruptcy court credited Laing with one-half of the proceeds from the sale of the airplane—in which Laing no longer held a legal interest—and applied that sum to reduce his indebtedness on the note held by Bradshaw, whose claim was then allowed in the resulting, reduced amount. *Id.* at 3–4, 7.

On appeal to the district court, Bradshaw and Johnson argued that the state court judgment on the Laing note should have been accorded preclusive effect with respect to Laing's obligation, without any modification based on the bankruptcy court's perception of the equities involved. Relying on our decision in *In re Wallace,* 840 F.2d 762, 764–65 (10th Cir.1988), the district court agreed, in principle, that the doctrine of collateral estoppel may be invoked in bankruptcy proceedings, but also recognized that the existence of fraud may bar its application, citing *Heiser v. Woodruff,* 327 U.S. 726, 736, 66 S.Ct. 853, 857, 90 L.Ed. 970 (1946). The district court concluded that a remand for specific findings on the issue of fraud was, therefore, appropriate:

> Therefore, unless fraud or collusion exists in the instant case, it is error for the Bankruptcy Court to disregard the doctrine of collateral estoppel. If fraud or collusion *does* exist, then the state court judgment need not be given *res judicata* effect, and the Bankruptcy Court decision will stand. At several times during the proceedings, the Bankruptcy Court alludes to the fact that fraud or collusion did exist in this case. However, the Bankruptcy Court made *no specific factual finding* as to either fraud or collusion. Such a finding is not clearly set forth in the decision of the court and this court, on appeal, cannot infer whether the Bankruptcy Court's decision was motivated by such finding.
>
> Accordingly, the case is remanded to the Bankruptcy Court so it may state specifically its findings and whether the downward adjustment to Bradshaw's proof of claim was motivated by the existence of fraud or collusion.

District Court Order filed July 24, 1990, at 6 (footnote omitted and emphasis in original).

On remand, the bankruptcy court found on the existing record "that Johnson's actions amount to fraud and collusion. Johnson breached his fiduciary duty as an attorney and joint venturer. His actions, fully described in the court's Memorandum on Objection to Claim of Bradshaw/Johnson ... and Pre–Hearing Order regarding Debtor's objection to Bradshaw's claim[,] ... were the equivalent of fraud and collusion." Supplemental Finding of Fact filed August 3, 1990, at 1. Thereafter, the district court summarily affirmed the bankruptcy court's decision on the basis of the lower court's fraud determination, which it held was not clearly erroneous. District Court Order filed February 19, 1991, at 1–2.

We begin our analysis with *In re Wallace,* which recognized that notwithstanding federal policy considerations barring the use of res judicata to preempt bankruptcy court dischargeability determinations altogether, *see Brown v. Felsen,* 442 U.S. 127, 138–39 and n. 10, 99 S.Ct. 2205, 2212–13 and n. 10, 60 L.Ed.2d 767 (1979); *In re Shuler,* 722 F.2d 1253, 1257–58 and n. 10 (5th Cir.), *cert. denied,* 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984), the more narrow doctrine of collateral estoppel remains available in bankruptcy "if (1) the issue to be precluded is the same as that involved in the prior state action, (2) the issue was actually litigated by the parties in the prior action, and (3) the state court's determination of the issue was necessary to the resulting final and valid judgment." *In re Wallace,* 840 F.2d at 765. The district court expressly noted the absence of any dispute over the satisfaction of these three conditions, *see* District Court Order filed July 24, 1990, at 5 n. 5, and the parties have not taken issue with that assessment.

Instead, the crux of this case concerns the lower court's application of an established federal exception to collateral estoppel that is operative in bankruptcy when the prior ruling is defective "because of want of jurisdiction of the court which

rendered it ... or because *it was procured by fraud* of a party." *Heiser,* 327 U.S. at 736, 66 S.Ct. at 857 (emphasis added); *see Browning v. Navarro,* 887 F.2d 553, 562–63 (5th Cir.1989); *Kelleran v. Andrijevic,* 825 F.2d 692, 694 (2d Cir.1987), *cert. denied,* 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988). Bradshaw and Johnson contend that the lower courts erred by interpreting the underscored phrase too broadly, and that, properly construed, the phrase does not encompass the kind of fraud alleged and found below.[3] We review the lower courts' determination regarding the preclusive effect of the prior judgment de novo. *See May v. Parker–Abbott Transfer & Storage, Inc.,* 899 F.2d 1007, 1009 (10th Cir.1990).

Confronted with the issue in a similar situation, the Fifth Circuit noted that *"Heiser* does not define 'judgment procured by fraud.'" *Browning v. Navarro,* 826 F.2d 335, 342 (5th Cir.1987). However, the court did "find some direction from review of cases which, in other contexts, have utilized the courts' equitable power to set aside a judgment on the ground of fraud." *Id.* at 343. Primarily on the basis of its review of *United States v. Throckmorton,* 98 U.S. 61, 65–66, 68, 25 L.Ed. 93 (1878) (alleged use of perjured testimony insufficient to warrant vacatur of former judgment; such relief justified only for fraud extrinsic or collateral to issues tried and not for fraud that was in issue in former suit), and *Hazel–Atlas Glass Co. v. Hartford–Empire Co.,* 322 U.S. 238, 245–46, 64 S.Ct. 997, 1000–01, 88 L.Ed. 1250 (1944) (relief from judgment granted where Court found "a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals"), the *Browning* court concluded that to justify the bankruptcy court's departure from a prior judgment obtained against the debtor, the trustee

> must demonstrate that the judgment was obtained as the result of a scheme or collusion that is designed to influence corruptly the proceedings, or to inhibit

---

**3.** In light of our disposition, we need not, and therefore do not, express an opinion regarding the correctness of this finding. For purposes of

our analysis, we shall assume, arguendo, the fact of fraud and direct our attention to the nature of the fraud involved.

the ability of an adverse party to fully present his case or defense, and which has the effect of foreclosing to him the opportunity to have a fair and complete trial.... To set aside the judgment, the court must be convinced that the trial was rendered so fundamentally unfair by the scheme or collusion, that the court lacks confidence that the judgment is soundly based on law and fact.

*Browning,* 826 F.2d at 345. The cited passage is consistent with this court's view, originally expressed outside the bankruptcy context, that "fraud in the procurement of a judgment" sufficient to warrant relief therefrom is properly identified with "fraud on the court," *i.e.,*

> fraud which is directed to the judicial machinery itself and is not fraud between the parties.... It is thus fraud where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function—thus where the impartial functions of the court have been directly corrupted.

*Bulloch v. United States,* 763 F.2d 1115, 1121 (10th Cir.1985) (en banc).

In the present case, the conduct of Johnson relied upon by the bankruptcy court for its finding of fraud was not, under any reasonable interpretation, *directed at* the *state court* that rendered judgment for Bradshaw on the Laing note. On the contrary, the cited conduct related to the events that made up the *subject matter* of the state court action and indeed formed the basis of Laing's counter- and third-party claims against Bradshaw and Johnson. If fraud was involved at all, it was clearly not of the sort required under *Bulloch* and *Browning* to justify vacatur of the judgment obtained. Furthermore, since Laing's underlying allegations of breach of fiduciary duty and collusion were litigated in the state court action, they cannot serve now as the basis for collateral attack of the very judgment rendered in favor of Bradshaw and Johnson thereon. *See Browning,* 826 F.2d at 343 (Court in *Throckmorton* made clear that judgment could not be set aside for ground "'which

was actually presented and considered in the judgment assailed,'" quoting *Throckmorton,* 98 U.S. at 66); *cf. Heiser,* 327 U.S. at 736, 740, 66 S.Ct. at 857, 860 (collateral attack on judgment on grounds of fraud cannot be sustained when those grounds themselves have been rejected by the court in which judgment was rendered). Obviously, if judgments *resolving* disputes involving fraud were treated, for preclusion purposes, as judgments *procured by* the very conduct they address, no truly final judgment in fraud litigation would be possible. We accordingly adhere to the restrictive formulation of "fraud on the court" in assessing Laing's invocation of the *Heiser* fraud exception to collateral estoppel, which we hold inapplicable to the circumstances of this case.

Having reaffirmed, as a matter of federal law, that collateral estoppel is generally available in bankruptcy, and having also determined that the *Heiser* fraud exception thereto is not applicable to this case, our final task is to decide, in accord with our duty to render full faith and credit to state court judgments, *see* 28 U.S.C. § 1738, whether the Oklahoma courts would give preclusive effect to the judgment obtained by Bradshaw on the Laing note. *See Browning,* 887 F.2d at 562–63 (when a state court judgment is challenged in bankruptcy, it must be determined, first, whether there are federal grounds for setting aside the judgment and, if not, whether the judgment would be subject to collateral attack under state law); *Kelleran,* 825 F.2d at 694 (same two inquiries, federal and state, though order in analysis reversed). *See generally Bolling v. City & County of Denver ex rel. McNichols,* 790 F.2d 67, 68 (10th Cir.1986) (federal courts are required by section 1738 to "'give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered'" (quoting *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984))).

In Oklahoma, once a matter has passed to final judgment in a court of

competent jurisdiction, it may not be re-opened or subsequently considered absent fraud or collusion. *Application of Grand River Dam Auth.*, 554 P.2d 5, 7 (Okl.1976). More directly to the point, "that fraud which will justify a court of equity in vacating a judgment, must be fraud *extraneous to the issues presented and adjudication in the case in which judgment was rendered.*" *Chisholm v. Stephenson*, 363 P.2d 229, 233 (Okl.1961) (emphasis added). In light of what we have already said in connection with the federal fraud exception to collateral estoppel in bankruptcy, it is clear that the substantially similar rule prevailing in Oklahoma would not permit the lower courts' divergence from the judgment entered in Bradshaw's action on the Laing note.

Accordingly, we hold that the claim against Laing should have been allowed in accordance with the terms of the state court judgment previously rendered thereon. The contrary judgment of the United States District Court for the Northern District of Oklahoma is REVERSED, and the cause is REMANDED with directions to remand to the bankruptcy court for proceedings consistent with this opinion.