IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-50562
_____


CESAR ROBERTO FIERRO,

                                    Petitioner-Appellant,

                    versus

GARY L. JOHNSON, Director,
Texas Department of Criminal
Justice, Institutional Division,

                                    Respondent-Appellee.
_____

          Appeal from the United States District Court for the
                        Western District of Texas
_____
                          November 23, 1999
Before KING, Chief Judge, JOLLY, and WIENER, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

     Cesar Roberto Fierro, a death row inmate, has been here
before.  Fierro has been awaiting execution for over nineteen years
after having been convicted of capital murder and sentenced to
death for the murder of a taxi driver in El Paso, Texas.  He has
petitioned the federal courts for a writ of habeas corpus three
times, and his fourth petition--which we authorized--is now pending
in the district court.

     Today he comes to our court to challenge the district court's
denial of his motion to vacate its earlier judgment denying his
petition for habeas relief.  Fierro argues that because of the

discovery of certain evidence, it is now indisputable that his confession was involuntary and that police officers committed perjury in obtaining his conviction. He argues that the earlier judgment of the federal court denying habeas relief was obtained by fraud on the court and that the judgment should therefore be vacated. For the reasons stated below, we affirm the judgment of the district court refusing to set aside its earlier judgment denying habeas relief.

I

The facts underlying today's appeal have been reported in several published opinions. See Ex Parte Fierro, 934 S.W.2d 370 (Tex. Crim. App. 1996) (en banc); Fierro v. State, 706 S.W.2d 310 (Tex. Crim. App. 1986) (en banc); Fierro v. Lynaugh, 879 F.2d 1276 (5th Cir. 1989). We will not burden the federal reporters with another lengthy recitation. The procedural history of this case, however, requires thorough consideration for our purposes today.

Prior to Fierro's trial for murder in the Texas state court in 1980, Fierro moved the trial court to suppress his confession statement. He argued that the police coerced him into giving the confession by telling him that his parents were in a Mexican jail and that they would remain there until he confessed. The state court held a suppression hearing at which Officer Medrano--the officer who took Fierro's confession--testified. At this hearing,

Medrano testified that he did not have any information of Fierro's parents being held in custody. <u>Fierro</u>, 706 S.W.2d at 315. Another officer testified that Fierro was not threatened and that he gave the confession freely. <u>Id.</u> Fierro also testified at the hearing and contradicted the testimony of the two officers with his own version of the facts. <u>Id.</u> at 316. After hearing this testimony, the trial court decided to allow the confession into evidence. The arguments over the confession's voluntariness were also submitted to the jury and rejected. Fierro was convicted and he appealed through the Texas court system. His conviction and sentence were affirmed. The Texas Court of Criminal Appeals explicitly approved of the trial court's determination that Fierro had made his confession voluntarily. <u>Id.</u> at 316.

Fierro then sought a writ of habeas corpus in the state and federal courts. He first filed a <u>pro se</u> petition in the federal district court. The district court refused to grant the petition, and Fierro then unsuccessfully sought relief in the state courts. We affirmed the denial of his second federal petition for the writ in <u>Fierro v. Lynaugh</u>, 879 F.2d 1276 (5th Cir. 1989). In our affirmance, we gave the state court findings of fact their due presumption of correctness as directed by the federal habeas statutory provisions and case law. <u>See</u> <u>Fierro</u>, 879 F.2d at 1279. Fierro then sought certiorari in the Supreme Court. This petition

3

was also denied. Fierro v. Collins, 494 U.S. 1060 (1990). Fierro then filed a third federal habeas petition. We affirmed the dismissal of this petition in an unpublished opinion. Soon thereafter, in 1994, Fierro's attorney found what Fierro now argues is a "smoking gun." Fierro's attorney discovered a "supplemental police report" that "reflected that [Fierro's] parents were in the custody of the Juarez police." Ex Parte Fierro, 934 S.W.2d at 371. Fierro took this "new" evidence to the Texas Court of Criminal Appeals and obtained a ruling ordering the trial court to conduct a hearing and to enter findings of fact and conclusions of law addressing Fierro's allegations of perjury.

After holding a hearing, the state trial court made the following findings of fact:

> 1) That at the time of eliciting the Defendant's confession, Det. Medrano (now deceased) did have information that the Defendant's mother and stepfather had been taken into custody by the Juarez police with the intent of holding them in order to coerce a confession from the Defendant, contrary to said Det. Medrano's testimony at the pretrial suppression hearing.
>
> 2) That the District Attorney's Office did not withhold this Supplemental Offense Report from the attorneys for the Defendant.
>
> 3) That Det. Medrano presented false testimony regarding the nature and extent of the cooperation between the El Paso police and the Juarez police in this particular case, as it existed in 1979. There was no evidence produced to show that such practices are still taking place.

4

See Ex parte Fierro, 934 S.W.2d at 371. The trial judge concluded that Fierro should receive a new trial. The Texas Court of Criminal Appeals disagreed. Although it accepted the trial court's findings of fact, the appellate court denied any relief. The court held, under its harmless error analysis, that "it is more probable than not that the outcome of applicant's trial would have been the same absent the confession." Id. at 376.

After this setback, Fierro again sought relief in federal court. On November 11, 1997, the Fifth Circuit granted Fierro leave to file a successive habeas petition. See 28 U.S.C. § 2244(b)(3).[1] Fierro then proceeded to file the petition in the district court.

Along with this successive habeas petition, Fierro also filed a motion requesting that the district court vacate its earlier judgment denying his first habeas petition. In his motion, Fierro argued that the district court had the authority to vacate its earlier judgment under (1) its "inherent equitable powers," (2)

_____

[1]We stated in our order that

[i]n addition to the claim that an El Paso police officer gave perjured testimony at Fierro's pretrial suppression hearing, Fierro is authorized to raise the related issue whether the attorneys who represented Fierro at trial and on direct appeal were ineffective for failing to discover the existence of the supplemental offense report on which the claim of perjured testimony is based.

5

Fed. R. Civ. P. 60(b)(5), and (3) Fed. R. Civ. P. 60(b)(6).[2] The district court denied this motion, relying on our precedent holding that Rule 60(b) motions are to be treated as successive habeas petitions. The district court then concluded that it had no jurisdiction to consider the arguments in this motion because we

[2]Fed. R. Civ. P. 60(b) states the following:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

had not authorized a successive habeas petition on grounds stated in the motion. The successive habeas petition (for which we gave authorization) remains pending in the district court.

After having his motion denied, Fierro sought a Certificate of Appealability ("COA") in our court, hoping to obtain authorization for an appeal of the denial order. On October 20, 1998, we denied the petition for a COA as unnecessary; we instructed Fierro that he did not need to seek a COA to appeal the denial of his motion based on equitable claims.[3] We also instructed the parties to brief the following issue:

> Whether there exists an equitable remedy, independent of 28 U.S.C. § 2244(b), which would allow a federal court to vacate a fraudulently-obtained judgment in a prior federal habeas proceeding.

We have determined, however, that we need not provide an answer to the question of whether the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") preempt our use of inherent powers in the context of a petition for a writ of habeas corpus.[4] We do not need to answer

---

[3]Although Fierro still has a successive habeas petition pending in the federal district court, the denial of Fierro's motion to vacate is a final decision ripe for appeal. The motion to vacate was filed in the case styled <u>Fierro v. Lynaugh</u>, No. EP-87-CA-377. The pending, successive petition involves an independent proceeding under case No. EP-97-CA-480.

[4]Issues relating to any other constitutional challenges that Fierro might present must, of course, proceed through the ordinary habeas procedures.

the question because even if the AEDPA does not foreclose the use of courts' inherent powers to vacate prior judgments, Fierro has not met the standards for vacating a decision due to fraud on the federal courts.

## II

We begin our analysis by noting that according to 28 U.S.C. § 2244(b)(1), "[a] claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed." Fierro argued in a previous habeas petition, as he does now, that his confession was not voluntary and it should not have been admitted at his trial. Fierro's argument has not changed, but he now claims to have new evidence that gives more credence to his previous argument. Thus, the plain language of § 2244(b)(1) would bar any ruling in Fierro's favor upon a Rule 60(b) motion if that motion is construed as a "second or successive habeas corpus application."

Our own court and other circuit courts have decided that Rule 60(b) motions should be construed as successive habeas petitions governed by the AEDPA's provisions. See, e.g., United States v. Rich, 141 F.3d 550, 551-52 (5th Cir. 1998), cert. denied, 119 S.Ct. 1156 (1999); see also Burris v. Parke, 130 F.3d 782, 783 (7th Cir. 1997) (Easterbrook, J.) ("Appellate courts agree that a post-judgment motion under Fed. R. Civ. P. 60(b) in the district

court, or the equivalent motion in the court of appeals--which is to say, a motion to recall the mandate--is a `second or successive' application for purposes of § 2244(b)."). In <u>Burris v. Parke</u>, 130 F.3d 782 (7th Cir. 1997), the habeas petitioner asked the Seventh Circuit to recall its mandate based on new testimonial evidence from a neuropsychologist. The court rejected the request:

> Burris wants us to recall our mandate to take a step that every court of appeals that has addressed the subject believes forbidden by § 2244(b): reassessing old theories in light of new evidence. A state governor or clemency board may receive and act on such evidence; under § 2244(b), a federal court may not.

<u>Id.</u> at 785.

Fierro argues, however, that his "new" evidence attacks the very integrity of the proceedings, both in the district court and this court.[5] Thus, the question becomes whether we treat a Rule 60(b) motion as a successive habeas petition even when the arguments allege that fraud on the court has occurred. Stated differently, can the court's inherent powers save Fierro's Rule 60(b) motion from a quick dismissal under § 2244(b)(1)?[6]

---

[5]Fierro argues (1) that the district court should have recalled the mandate in its judgment on his first habeas petition to that court, and (2) that we should recall the mandate and vacate our opinion in <u>Fierro v. Lynaugh</u>, 879 F.2d 1276 (5th Cir. 1989).

[6]Only one circuit appears to have confronted this issue. The Fourth Circuit addressed the question in an unpublished opinion. <u>See</u> <u>United States v. MacDonald</u>, No. 97-7297, 1998 WL 637184 (4th

It is exceedingly difficult to answer this question because the search for an answer pits the clear statutory language (of § 2244(b)(1)) against long-established "inherent" powers of the judiciary.[7]  The Supreme Court has repeatedly held that federal courts possess the inherent power "to vacate [their] own judgment[s] upon proof that a fraud has been perpetrated upon the court."  Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991) (citing Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)).[8]  The power to grant "[e]quitable relief against fraudulent judgments is not of statutory creation."  Hazel-Atlas, 322 U.S. at 248.  This equitable power was "firmly established in English practice long before the foundation of our Republic," id.

---

Cir. Sept. 8, 1998).  The court concluded that the AEDPA does not bar a Rule 60(b) motion premised upon fraud on the court.  Id. at *3.  The court reached this conclusion, in part, because "actions alleging fraud upon the court . . . attack the validity of a prior judgment, based on the theory that 'a decision produced by fraud on the court is not in essence a decision at all and never becomes final.'"  Id. (quoting 11 Wright and Miller, FEDERAL PRACTICE AND PROCEDURE § 2870 at 409 (1995) (quoting Kenner v. Commissioner of Internal Revenue, 387 F.2d 689, 691 (7th Cir. 1968)).  The court also went on to conclude, however, that the facts alleged did not constitute fraud on the court.  MacDonald, 1998 WL 637184 at *3-6.

[7]The lower federal courts were, of course, created by acts of Congress.  Congress may, therefore, be able to curtail any of the inherent powers possessed by those courts that Congress creates.  See Chambers v. NASCO, Inc., 501 U.S. 32, 47 (1991).

[8]The Chambers case dealt with the federal courts' inherent power to impose sanctions for bad faith conduct.  The court held that Rule 11 does not displace the courts' inherent power to impose sanctions.

10

at 244, and the power is vested in courts by their very creation. See Chambers, 501 U.S. at 43-44.  Cf. id. at 58 (Scalia, J., dissenting) ("Some elements of th[e] inherent authority are so essential to '[t]he judicial Power,' U.S. Const., art. III, § 1, that they are indefeasible . . .").[9]

Nevertheless, the Supreme Court's review of an appellate court's use of its inherent powers in habeas cases is influenced by "the statutory and jurisprudential limits applicable in habeas corpus cases." Calderon v. Thompson, 118 S.Ct. 1489, 1499 (1998). "In light of 'the profound societal costs that attend the exercise of habeas jurisdiction,' we have found it necessary to impose significant limits on the discretion of federal courts to grant habeas relief."  Id. (citing Smith v. Murry, 477 U.S. 527, 539, 106 S.Ct. 2661, 2668, 91 L.Ed.2d 434 (1996)).  "These limits reflect our enduring respect for the State's interest in the finality of convictions that have survived direct review within the state court system. . . . Finality is essential to both the

---

[9]But see id. at 47 (with internal quotation marks and citations omitted):

> It is true that the exercise of the inherent power of lower federal courts can be limited by statute and rule, for [t]hese courts were created by act of Congress. Nevertheless, we do not lightly assume that Congress has intended to depart from established principles such as the scope of a court's inherent power.

11

retributive and the deterrent function of criminal law." Thompson, 118 S.Ct. at 1500-01.

In Thompson, the Supreme Court held that the Ninth Circuit abused its discretion in recalling its own mandate in a habeas case. Id. at 1494. The case involved the appellate court's inherent power to recall its own mandate, a power specifically recognized by the Supreme Court. Id. at 1498. It is important to note, however, that in discussing Thompson in the context of today's case, Thompson did not concern the use of inherent powers to correct a fraud upon the court. Instead, an en banc panel of the Ninth Circuit recalled its mandate sua sponte because "the decision of the original panel 'would [have led] to a miscarriage of justice.'" Id. at 1497 (quoting Thompson v. Calderon, 120 F.3d 1045, 1048 (9th Cir. 1997)).[10] The Ninth Circuit exercised its inherent power to recall the mandate so that it could reconsider the merits of the petitioner's first habeas petition. Thompson, 118 S.Ct. at 1500. The court did not consider any evidence presented in subsequent motions and petitions. Id.

In contrast to the situation faced by the Ninth Circuit, we confront a case involving a prisoner's motion to vacate a

---

[10]The Ninth Circuit recalled its mandate 53 days after the mandate had issued. Thompson, 118 S.Ct. at 1497.

12

judgment.   With respect to such a motion, the <u>Thompson</u> Court

stated:

> In a § 2254 case, a prisoner's motion to recall the mandate on the basis of the merits of the underlying decision can be regarded as a second or successive application for purposes of § 2244(b).  Otherwise, petitioners could evade the bar against relitigation of claims presented in a prior application, § 2244(b)(1), or the bar against litigation of claims not presented in a prior application, § 2244(b)(2).  If the court grants such a motion, its action is subject to AEDPA irrespective of whether the motion is based on old claims (in which case § 2244(b)(1) would apply) or new ones (in which case § 2244(b)(2) would apply).

<u>Thompson</u>, 118 S.Ct. at 1500.   This language suggests that a

court's recall of its mandate in this case would be governed by

§ 2244(b) because the evidence supporting any relief would be

"new . . . evidence presented in [Fierro's] successive application

for habeas relief."[11]   A straightforward application of the

<u>Thompson</u> rule, combined with a literal application 2244(b)(1),

appears to leave the court powerless to correct any ruling when

(1) fraud on the court is subsequently uncovered and (2) that

fraud somehow interrelates with a habeas claim previously

presented.

---

[11]This new evidence includes affidavits submitted by various people as well as the state trial court's new findings of fact (which are, of course, based on "new" evidence--i.e., oral testimony as well as affidavits--produced since this court affirmed the denial of Fierro's prior petition).

13

On the other hand, perhaps the Supreme Court would not apply the above general principles to Fierro's case.  The Court qualified its Thompson opinion with the following language:

> We should be clear about the circumstances we address in this case. . . . This [] is not a case of fraud upon the court, calling into question the very legitimacy of the judgment.  See Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944).

Thompson, 118 S.Ct. at 1501-02.  The Court thus suggests that cases involving claims of fraud on the court may warrant different treatment.

After reviewing the parties' arguments, we conclude that we need not decide whether the provisions of AEDPA preempt, or otherwise modify, courts' use of their inherent powers in habeas cases involving claims of fraud on the court.

Even if an inherent power gives life to a challenge that § 2244(b)(1) would otherwise forbid, Fierro's allegations do not support the use of such an inherent power because he  has failed to allege any facts that would constitute a fraud on the federal courts.

III

A

Before analyzing Fierro's "fraud on the court" argument as it applies to the federal district court and to this court, it is important to state clearly the evidence that Fierro does, and does

14

not, allege. Consistent with the findings of the state courts, Fierro alleges that Officer Medrano testified falsely at the suppression hearing in state court. Fierro does not, however, allege that the prosecuting attorney knew that Medrano's testimony was false. Most important to this appeal, Fierro does not allege that the attorneys representing the Director of the Texas Department of Corrections in these federal habeas proceedings had any knowledge that the subject testimony was false. Furthermore, it is important to keep in mind that in reviewing the district court's denial of the motion to vacate, we deal only with allegations of fraud on the <u>federal</u> courts, not any fraud that may have been perpetrated upon the state courts.[12] Thus we will consider only the conduct of the relevant parties during the federal habeas proceedings.

Both parties cite our precedent in which we stated the black letter law for finding a fraud on the court:

> To establish fraud on the court, it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its discretion. Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court.

---

[12]Fraud on state courts cannot be the basis of habeas relief unless that fraud amounts to the denial of a federal right. <u>Sawyers v. Collins</u>, 986 F.2d 1493, 1497 (5th Cir. 1993); <u>citing</u> <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983). No such claim is made here.

> Less egregious misconduct, such as nondisclosure to the
> court of facts allegedly pertinent to the matter before
> it, will not ordinarily rise to the level of fraud on
> the court.

First Nat'l Bank of Louisville v. Lustig, 96 F.3d 1554, 1573 (5th

Cir. 1996) (quotation marks and citations omitted).[13]

---

[13]Fierro relies heavily on two cases--Hazel-Atlas and Rozier v. Ford Motor Co., 573 F.2d 1332 (5th Cir. 1978)--to construct what he considers to be the elements of an action for "fraud on the court." Direct reliance on these cases, however, is somewhat questionable. The court in Rozier analyzed a motion brought under Rule 60(b)(3), not an equitable action for fraud on the court. Furthermore, the Rozier court explained at length that the requirements for a "fraud on the court" action were more stringent than those for a Rule 60(b)(3) motion. Rozier, 573 F.2d at 1337-39; see also Great Coastal, 675 F.2d at 1356 ("fraud on the court" concept "should be construed very narrowly," otherwise the concept could "easily overwhelm the specific provision of 60(b)(3) and its time limitation and thereby subvert the balance of equities contained in the Rule"); Gleason v. Jandrucko, 860 F.2d 556, 558 (2d Cir. 1988) (stating that "fraud on the court" action is narrower in scope than Rule 60(b)(3)). Fierro does not, and could not, base his argument on Rule 60(b)(3). That provision includes a one-year statute of limitations:

> On motion and upon such terms as are just, the court may
> relieve a party or a party's legal representative from a
> final judgment, order, or proceeding for the following
> reasons: . . . (3) fraud (whether heretofore denominated
> intrinsic or extrinsic), misrepresentation, or other
> misconduct of an adverse party . . . The motion shall be
> made . . . not more than one year after the judgment,
> order or proceeding was entered or taken. . . .

Fierro presented his Rule 60(b) motion to the district court more than ten years after the district court's judgment from which Fierro seeks relief.

Aside from Rozier, Fierro's reliance on Hazel-Atlas--without alluding to our subsequent case law interpreting that decision--is questionable; our court has interpreted Hazel-Atlas in the light of other Supreme Court and sister circuit precedent. See especially Browning v. Navarro, 826 F.2d 335, 342-45 (5th Cir. 1987). In Browning, we thoroughly reviewed Supreme Court precedent in an

16

After noting this language, the arguments in the state's and Fierro's briefs take predictable paths. The state essentially argues that false testimony by a police officer (when the state's attorneys in federal habeas proceedings are not aware of its false nature) amounts to "nondisclosure to the court of facts allegedly pertinent to the matter before it." As a result, such nondisclosure would not establish fraud on the court. Fierro argues that the false testimony constitutes "fabrication of evidence by a party in which an attorney is implicated." Although Fierro does not argue that the state's attorneys knew about Officer Medrano's false testimony, Fierro maintains that the state's attorneys--both the prosecuting attorneys and the attorneys representing the Director of the Texas Department of Corrections--are implicated because testifying officers and the state's attorneys constitute the "prosecution team."

Our decision in Browning v. Navarro, 826 F.2d 335 (5th Cir. 1987), provides further guidance on the standard for considering fraud upon the court. In Browning, this court analyzed two Supreme Court cases dealing with "fraud on the court" actions: United States v. Throckmorton, 98 U.S. 61 (1878), and Hazel-Atlas. The court summarized the lessons of these two cases:

---

effort to define "judgment procured by fraud." Fierro's briefs do not contain a whisper of Browning.

17

> *Throckmorton* stands clearly for the proposition that intrinsic fraud, that is, fraudulent evidence upon which a judgment is based, is not grounds to set aside a judgment. It also makes clear that extrinsic fraud, that is, fraud that was not the subject of the litigation, that infects the actual judicial process, is grounds to set aside a judgment as procured by fraud.[14] . . . *Hazel-Atlas* is to be read as an expansion of the limits set by *Throckmorton* in attacking judgments generally . . . *Hazel-Atlas* allows a judgment to be attacked on the basis of intrinsic fraud that results from corrupt conduct by officers of the court.

*Browning*, 826 F.2d at 344 (footnotes omitted).

The allegedly false testimony of Officer Medrano standing alone clearly constitutes intrinsic fraud and will be insufficient to set the judgment aside.[15] Fierro's only hope to prove fraud sufficient to set aside the federal judgment is to show that the unknowing reliance on Officer Medrano's false testimony by the state's habeas attorney constitutes "corrupt conduct by officers of the court."[16] Fierro notes that our court recently stated that

---

[14]*See also* *Browning*, 826 F.2d at 343 ("According to Justice Miller's reasoning [in *Throckmorton*], in order to collaterally attack the judgment, it must have been obtained by fraud, as distinguished from having been based on fraud.").

[15]*See* *Browning*, 826 F.2d at 344 n.11 (noting that some commentators have criticized the intrinsic/extrinsic distinction); *Gleason*, 860 F.2d at 560 (refusing to recognize the intrinsic/extrinsic distinction as a factor in analyzing a "fraud on the court" action).

[16]In a footnote, the *Browning* court stated that "[t]he courts have uniformly held that perjury of a single witness, false evidence (in the absence of attorney involvement) or mere nondisclosure are insufficient to establish fraud upon the court." *Browning*, 826 F.2d at 344 n.12.

government prosecutors have constructive notice of a police report that contradict the elicited testimony of a government witness. Creel v. Johnson, 162 F.3d 385, 391 (5th Cir. 1998). Applying the rule in Creel to his own case, Fierro argues that the state attorneys' conduct in the state trial (and on appeal) was corrupt because of their constructive knowledge of a police report that contradicted Medrano's testimony. This is only the first step, however. To succeed in the federal court, Fierro asks us to extend the rule in Creel to hold that attorneys representing the State Department of Corrections in a federal habeas case have constructive notice of police reports that contradict the elicited testimony of government witnesses at the trial.

Even if we accepted Fierro's argument that prosecuting attorneys constructive knowledge of false testimony could satisfy the requirement for a showing of fraud upon the court, we have no basis in law or fact to extend such a theory to the state's habeas attorneys. Although the prosecuting attorney and Officer Medrano might arguably be considered a solitary prosecution unit, the relationship between Officer Medrano and the state's attorneys in a federal habeas proceedings is too attenuated to allow the necessary imputation.

The attorneys for the Texas Department of Corrections in a federal habeas case do not act as prosecutors of the crime

investigated by the law enforcement officers.  Prosecutors are actively involved in trial preparation, production of evidence, examination of witnesses, and evaluating the credibility of prosecution witnesses.  Thus prosecutors work hand in hand with the police in presenting the case before the courts.  The attorneys for the Director of Corrections, however, act in response to a petitioner's charge of unlawful detention that usually centers around the larger questions of the constitutionality of the judgments of the criminal courts.  Although these attorneys will undoubtedly point to the work of the prosecuting attorneys to defend the petitioner's continuing detention, the Director's attorneys neither work with the police in a common enterprise,  nor are they in the business of prosecuting crime.  Lacking such a connection as part of a prosecution team, any constructive knowledge of police reports that might be imputed to the prosecutors cannot be imputed to the state's attorneys in a federal habeas case.

B

Finally, we do recognize that Fierro argues that the Texas Court of Criminal Appeals seriously erred in its ruling related to the state trial court's finding that Officer Medrano gave false testimony.  For example, Fierro argues that the Texas court erred in its application of the harmless error standard.  For the

20

federal courts to provide any relief based on these arguments, however, Fierro must allege some violation of a federal right. Any petition based on federal law will be governed by § 2244(b) as a successive habeas petition.  It is not appropriate for us to address these arguments in an appeal from the denial of a motion to vacate an earlier judgment.  We therefore state no opinion as to the validity of any potential constitutional challenges to his continued detention.

IV

For the foregoing reasons, the judgment of the district court is

A F F I R M E D.

21