# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-70006

JOSEPH ROLAND LAVE, JR.,

Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**

July 19, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:00-CV-2137

Before KING, CLEMENT, and PRADO, Circuit Judges.

PER CURIAM:*

Joseph Roland Lave, Jr. stands before us convicted of the 1992 capital murders of Justin Marquart and Frederick Banzhaf. He was sentenced to death for the murder of Marquart and to life imprisonment for the murder of Banzhaf. After unsuccessfully challenging his case on direct appeal, through four state post-conviction proceedings, and a federal habeas proceeding, he

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-70006

returned again to federal court. Lave moved under Federal Rule of Civil Procedure 60(b) for the district court to reconsider his federal habeas petition, arguing that relief was necessary to correct a judgment procured through fraud and misconduct. The district court found that Lave's motion constituted a successive petition for habeas relief under 28 U.S.C. § 2244(b). Because Lave had not obtained a Certificate of Appealability ("COA") from this court under 28 U.S.C. § 2244(b)(3), the district court dismissed his motion for want of jurisdiction. A few days later, the district court denied Lave a COA to file a successive habeas petition.  Lave now seeks a COA from this court.

## I.

The facts of Lave's crime have been well documented in numerous state and federal court decisions.  This court earlier summarized them as follows:

> Lave, James Langston ("Langston"), and Timothy Bates ("Bates") conspired to rob a sporting goods store. During the robbery, the assailants brutally killed two of the store's employees, Frederick Banzhaf ("Banzhaf") and Justin Marquart ("Marquart"). A third employee, Angela King, was also attacked but managed to survive, call 911 and identify Langston as one of the perpetrators. As a result of her identification, the police sought to apprehend Langston. During the attempted arrest, Langston tried to run over the police officers. The police responded by shooting Langston who died soon after. Inside Langston's shoe, the police found a card with Bates' name and phone number. Using that information, the police arrested Bates, who identified Lave as the third robber. Subsequently, the police executed a warrant and searched Lave's apartment and automobile, where they seized merchandise from the sporting goods store and other evidence. Lave surrendered to the police two days later.

*Lave v. Dretke*, 416 F.3d 372, 375-76 (5th Cir. 2005). In August 1993, Lave was tried and convicted for the capital murder of Banzhaf. He was sentenced to life

2

imprisonment for this murder. In March 1994, Lave was tried, convicted, and sentenced to death for the murder of Marquart. Lave appealed to the Texas Court of Criminal Appeals ("CCA"), which affirmed. *Id.* Lave then sought habeas corpus relief in the state trial court. The trial court denied relief, and the CCA affirmed. *Id.* Next, Lave filed a petition for federal habeas relief with the United States District Court for the Northern District of Texas. *Id.* The district court denied relief. This court granted him a COA on a single issue, but later affirmed the judgment of the district court, denying him habeas relief. *Lave v. Dretke*, 444 F.3d 333, 336 (5th Cir. 2006). Lave petitioned the Supreme Court for a writ of certiorari, but it denied his petition. *Lave v. Quarterman*, 549 U.S. 1264 (2007). Then, the state trial court set Lave's execution date for September 13, 2007.

Lave filed another post-conviction petition and a motion to stay his execution, arguing that his confrontation rights were violated under *Crawford v. Washington*, 541 U.S. 36 (2004).[1] The CCA dismissed the petition and denied the motion to stay. *Ex parte Lave*, No. WR-44564-02, 2007 WL 2655888, at *1 (Tex. Crim. App. Sept. 7, 2007). Then, the State discovered potentially exculpatory evidence—a second polygraph of co-conspirator Bates—in its files; it disclosed the material to Lave and moved to withdraw Lave's execution date. Lave had already sought certiorari from the Supreme Court. On February 25, 2008, the Supreme Court granted certiorari, vacated the CCA's order, and remanded the case to the CCA for consideration in light of *Danforth v. Minnesota*, 127 S. Ct. 2427 (2007), which allowed state courts to apply their own retroactivity rules. *Lave v. Texas*, 552 U.S. 1228 (2008). But Lave was

---

[1] *See Lave*, 444 F.3d at 334 ("At Lave's capital murder trial, Officer Kevin Hughes, one of the state's witnesses, testified as to a statement by one of Lave's alleged accomplices. In the course of an interrogation, the accomplice told Officer Hughes that Lave committed the murder."), *cert. denied sub nom. Lave v. Quarterman*, 549 U.S. 1264 (2007).

No. 16-70006

again unsuccessful. *See Ex parte Lave*, 257 S.W.3d 235, 237 (Tex. Crim App. 2008) (denying relief and ruling that *Crawford* does not apply retroactively to cases on collateral review in Texas state courts).

On September 8, 2008, Lave filed a third state post-conviction petition, alleging that he was denied a fair trial and due process when the State suppressed prior statements of his accomplice in the crime in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *See Ex parte Lave*, Nos. WR-44,564-03, WR-44,564-04, 2013 WL 1449749, at *1 (Tex. Crim. App. Apr. 10, 2013). The CCA found that the successive petition complied with Texas Code of Criminal Procedure Article 11.071, Section 5(a) and remanded it to the trial court for consideration of the allegation. *Ex parte Lave*, No. WR-44,564-03, 2008 WL 5049908, at *1 (Tex. Crim. App. Nov. 26, 2008). In discovery for this post-conviction proceeding, Lave's attorney was given access to the prosecutors' trial file, including boxes previously undisclosed and marked "work product", along with portions of the prosecutor's appellate file. Lave uncovered documents that he alleges exculpate him.[2] These documents became the bases for Lave's fourth state habeas application, which he filed on December 21, 2012. Lave moved to consolidate his third and fourth applications, and the CCA subsequently granted that motion. Following a hearing and review, the trial court made merits findings on all claims, recommending denial of relief. *Ex parte Lave*, Nos. WR-44,564-03, WR-44,564-04, 2015 WL 831797, at *1 (Tex. Crim. App. Feb. 25, 2015). The CCA adopted the trial court's recommendation and denied relief. *Ex parte Lave*, Nos. WR-44,564-03, WR-44,564-04, 2015 WL 831797, at *1 (Tex. Crim. App. Feb. 25, 2015).

---

[2] These documents included the entire Richardson Police Department supplementary reports on the offense, inconsistent statements by witness King, King's medical records, notes, and a memo about Bates' inconsistent testimony.

No. 16-70006

On May 6, 2015, Lave moved under Federal Rule of Civil Procedure 60(b) for the district court to reconsider his federal habeas petition, arguing that relief was necessary to correct a judgment procured through fraud and misconduct. The district court found that Lave's motion constituted a successive petition for habeas relief under 28 U.S.C. § 2244(b). Because Lave had not obtained a COA from this court under 28 U.S.C. § 2244(b)(3), the district court dismissed his motion for want of jurisdiction. A few days later, the district court denied Lave a COA. Lave now seeks a COA from this court.

## II.

Federal district courts have jurisdiction to consider Rule 60(b) motions in habeas proceedings as long as the motion "attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings." *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005). "Fraud on the federal habeas court is one example of such a defect." *Id.* at 532 n.5. But if a Rule 60(b) motion advances one or more new claims— such as seeking to add a new ground for relief or attacking a federal court's previous resolution of a claim on the merits—then the motion will be treated as a habeas corpus application. *Id.* at 532-33; *see also Ochoa Canales v. Quarterman*, 507 F.3d 884, 888 (5th Cir. 2007) (per curiam) ("In other words, a Rule 60(b) motion that attacks only a defect in the integrity of the federal habeas proceedings should not be treated as a successive habeas application."). Nearly all habeas petitioners whose Rule 60(b) motions are denied must still obtain a COA to appeal. *See Ochoa Canales*, 507 F.3d at 888 (holding that a COA is not required to appeal the denial of a 60(b) motion "only when the purpose of the motion is to reinstate appellate jurisdiction over the original denial of habeas relief").

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A COA is a

"jurisdictional prerequisite" such that "until a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). "Under the controlling standard, a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* (internal quotation marks and alterations omitted) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims," but instead requires "an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El*, 537 U.S. at 336.  To obtain a COA where the district court rejected the constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. Where the district court dismissed a claim on procedural grounds (such as failure to exhaust in state habeas proceedings) without reaching the merits, then "a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

"The decision to grant or deny relief under Rule 60(b) lies within the sound discretion of the district court and will be reversed only for an abuse of that discretion." *Hernandez v. Thaler*, 630 F.3d 420, 428 (5th Cir. 2011) (internal quotation marks omitted). "On [Lave's] motion for a COA, then, we must determine whether a jurist of reason could conclude that the district court's denial of [Lave's] motion was an abuse of discretion." *Id.* In death

No. 16-70006

penalty cases, we resolve any doubts in favor of granting a COA. *See Martinez v. Dretke*, 404 F.3d 878, 884 (5th Cir. 2005).

### III.

We first consider whether reasonable jurists would debate whether Lave established fraud on the federal court. Lave argues that the lead trial prosecutor in the case, Dan Hagood, committed intrinsic fraud by suppressing prior inconsistent statements made by King and Bates and by helping to develop King's ultimate trial testimony. Lave further contends that the attorney for the Director of the Texas Department of Criminal Justice, Charles Palmer, committed extrinsic fraud on the court by, at a minimum, recklessly avoiding finding out whether Lave's suppression claims were true and consequently making false statements to the federal district court.[3] Lave contends that these actions are sufficient to constitute fraud on the court. Lave is wrong.

First, Lave's alleged fraud by the state trial prosecutor fails to establish a fraud on the federal court. *See Fierro v. Johnson*, 197 F.3d 147, 153-54 (5th Cir. 1999) ("[I]t is important to keep in mind that in reviewing the district court's denial of the motion to vacate, we deal only with allegations of fraud on the *federal* courts, not any fraud that may have been perpetrated upon the state courts."). Second, fraud on the federal court is a very difficult standard to meet.

> To establish fraud on the court, it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its discretion. Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in

---

[3] Despite his sweeping allegation, Lave provides no examples of Palmer making any false statements to the federal court. Instead, Lave's allegation rests entirely on Palmer's resistance to discovery in the federal habeas proceeding.

> which an attorney is implicated, will constitute a fraud on the court. Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court.

*Id.* at 154 (quoting *First Nat'l Bank of Louisville v. Lustig*, 96 F.3d 1554, 1573 (5th Cir. 1996)). Lave's arguments are in line with those arguments rejected by this court in *Fierro*.

In that case, Fierro, a death row inmate, appealed the district court's denial of his motion to vacate its earlier judgment, denying his petition for habeas relief. *Id.* at 148. Fierro alleged that the earlier judgment denying federal habeas relief was obtained by fraud on the court and that the judgment should be vacated. *Id.* Years after Fierro's federal habeas proceeding, his attorney found a supplemental police report purporting to support Fierro's claims that his confession was involuntary and that a police officer had lied during a pretrial suppression hearing. *Id.* at 149. Fierro argued that these lies infected every proceeding, including his federal habeas proceedings. *Id.* at 149-50. Fierro did not argue that the state's federal habeas attorneys knew about the false testimony, but instead he argued that they were implicated because they constituted the prosecution team. *Id.* at 154-55. The *Fierro* court acknowledged that the officer's false testimony constituted intrinsic fraud, but rejected Fierro's attempt to extend the officer's fraud to the federal court proceeding. It noted that

> [t]he attorneys for the Texas Department of Corrections in a federal habeas case do not act as prosecutors of the crime investigated by the law enforcement officers. Prosecutors are actively involved in trial preparation, production of evidence, examination of witnesses, and evaluating the credibility of prosecution witnesses. Thus prosecutors work hand in hand with the police in presenting the case before the courts. The attorneys for the Director

> of Corrections, however, act in response to a petitioner's charge of unlawful detention that usually centers around the larger questions of the constitutionality of the judgments of the criminal courts. Although these attorneys will undoubtedly point to the work of the prosecuting attorneys to defend the petitioner's continuing detention, the Director's attorneys neither work with the police in a common enterprise, nor are they in the business of prosecuting crime. Lacking such a connection as part of a prosecution team, any constructive knowledge of police reports that might be imputed to the prosecutors cannot be imputed to the state's attorneys in a federal habeas case.

*Id.* at 155-56. Here, like in *Fierro*, Lave has failed to connect any alleged fraud in the trial court to the federal habeas proceedings. Lave's attempts to do so by arguing that the Director's attorney recklessly avoided finding out if his suppression claims were true and by arguing that the Director's attorney had a duty to comb the prosecutor's file for exculpatory evidence fall short. *See id.* Thus, no reasonable jurist would debate that Lave failed to establish fraud on the federal court.

Lastly, Lave's argument that reasonable jurists would find the district court's conclusion that he presented "new claims" in his Rule 60(b) motion debatable or wrong needs little attention. Even if Lave is correct that his 60(b) motion only attacks the integrity of the federal habeas proceeding and does not assert new claims nor attack the merits of the district court's prior resolution of his habeas claims, we still deny him a COA. We do this because the district court did not abuse its discretion in denying his 60(b) motion when no reasonable jurist would debate that he failed to establish fraud on the federal court.[4]

---

[4] Nonetheless, we find no error in the district court's conclusion that Lave's 60(b) motion presents new claims, and thus we find no error in its treatment of the motion as a

No. 16-70006

**IV.**

For the foregoing reasons, Lave's motion for a COA is DENIED.

---

successive habeas petition. In the event that Lave is also seeking a COA from this court to appeal his successive habeas petition, we deny him a COA.